Wright v. Bolling.

taking of the note did not raise the presumption of payment."
6 Harris & Johns. R. 166 ; 15 New Hamp. R. 335, *supra.*
Judgment affirmed.

---

# WRIGHT *vs.* BOLLING.

27 259<br>93 520

[ACTION ON PROMISSORY NOTE BY PAYEE AGAINST MAKER.]

1. *Merchant's clerk may testify to what facts.*—A merchant's clerk and book-keeper, who testifies that he made all the entries on the books, and that he charged nothing as sold which was not sold, may further testify "that he is satis-fied and believes that all the items charged in the defendant's account were sold, though he cannot recollect them."

2. *Admissibility of parol evidence as to facts dehors written.*—In a suit on a promis-sory note by the payee against a surety, who signed as co-maker with his principal, the defendant introduced evidence, to show a partial failure of consideration, that the note was given for the amount of a book account due from his principal to plaintiff, which was secured by a mortgage pur-porting on its face to secure the amount of the debt then due ; that after the execution of the note and mortgage, the amount of this debt became a material question in a certain suit, in which plaintiff was examined as a witness ; and that on his examination as a witness in said suit, he could only prove a portion of the items embraced in the account: *Held*, that plaintiff might rebut this evidence, by making proof of other items in the account for articles sold after the execution of the mortgage, but before the date of the note ; and that such proof did not tend to vary or affect the terms of the mortgage, since the question at issue was whether the note was supported by a consideration, and not whether the mortgage operated prospectively or only secured the existing indebtedness.

3. *Mortgage—Contemporaneous parol agreement—Estoppel.*—A debtor by book ac-count gave his creditor a mortgage, which purported on its face to secure only his present indebtedness ; but there was a contemporaneous parol agreement that it should operate prospectively, so as to secure the account contracted during the remainder of the year. After the law-day of the mortgage, the debtor gave his note for the amount of the mortgage debt, with a surety as co-maker, to whom, in consideration of his signing the note, the creditor at the same time assigned the mortgage by written endorse-ment ; and at the time of this transaction, the creditor stated that the debt due under the mortgage was the amount for which the note was given, but no book or account was produced, nor did the debtor say anything as to the amount of the mortgage debt : *Held*, that if the surety signed the note with a knowledge of the parol agreement, he could not defeat a recovery on the note by insisting that the mortgage only afforded him a partial indemnity ;

and, on the other hand, that both his principal and the creditor were estopped from saying that the mortgage did not cover the entire amount for which the note was given.

4. *Charge referring question of law to jury, erroneous.*—A charge, the effect of which is to refer to the jury the decision of a question of law—*e. g.* whether the statement of a witness, which the court had admitted in evidence, was to be considered evidence—is improper and should be refused.

APPEAL from the Circuit Court of Butler.

Tried before the Hon. CHARLES W. RAPIER.

THIS action was founded on a promissory note for $82 46, executed by S. C. Benson and John S. Wright, dated April 18, 1854, and payable by the 25th December next thereafter, with interest from the 1st January, 1854, to John Bolling, or bearer. The defendant Wright, on whom alone the summons was executed, defended the suit, but the record does not state what the pleas were.

On the trial, as appears from the bill of exceptions, after the plaintiff had introduced in evidence the note declared on, the defendant offered in evidence, after proving its execution, a certain mortgage executed by said Benson to the plaintiff, dated April 28, 1853, conveying a wagon, nine oxen, and a growing crop of corn and potatoes to secure the amount of a book account then due and owing from said Benson to plaintiff. This mortgage contained a power of sale, the law-day being the 1st January, 1854; and on it was an endorsement, signed by plaintiff, in these words: "The 18th day of April, 1854, received note for the amount due me on the mortgage, and give it to John S. Wright to assign the note."

"The defendant also introduced a witness, who swore that the note sued on was given by defendant to plaintiff when said Benson was present; that Benson said nothing as to the amount of his indebtedness to the plaintiff, but plaintiff stated that Benson owed him under the mortgage the amount for which the note was given; that no book of accounts, or statement of the amount, was produced, and no items of the account mentioned; that the note, and the endorsement by plaintiff on the mortgage, were both made at the same time.

"The defendant also introduced a witness, who swore that on a previous trial between the State and said Benson, in

which the amount of Benson's indebtedness to plaintiff was a question, and after the assignment of the mortgage and making of the note, plaintiff was examined touching this indebtedness, and produced his books ; and that all he could swear to was, one barrel of flour, worth $9, and ten gallons of whiskey, worth $5 ; that his clerk was called in to aid him in making out his account, and they both could not make out any more.

"Here the defendant closed his closed case; and thereupon the plaintiff introduced one Wren, who swore that, previous to the making of the note, he was present and saw plaintiff bid off a yoke of oxen and a wagon, at $38, and pay .the money for the same ; that said oxen and wagon were sold at a constable's sale as the property of said Benson, and went back into Benson's possession. But this testimony, in reference to the oxen and wagon, was subsequently (and before the jury retired) excluded from the jury, on motion of the defendant.

" The plaintiff also introduced one McKellar, who swore that he was clerk for plaintiff in 1853, up to the 28th May of that year, and kept his books up to that time ; and he proved on the books, which were produced and before the witness, in his handwriting, items of account charged against said Benson (in the handwriting of witness) to the amount of $38 ; that while he was clerk as aforesaid, all that was sold from the store was sold by him, or within his knowledge ; that he made no entries on the books of things as sold which were not sold ; and that he was satisfied and believed that all those items were .sold to said Benson, but he could only remember three articles as being sold to him—which were, one barrel of flour, at $9 ; ten gallons of whiskey, at $5; and one bottle of oil, at seventy-five cents. The defendant moved the court to exclude from the jury that part of the testimony of said witness in these words—' that he was satisfied and believed that all those items were sold to said Benson' which he could not state from memory ; but the court overruled the objection,. the evidence went to the jury, and the defendant excepted.

" The *plaintiff* (?) also moved to exclude from the jury all the testimony of said witness, as to the items which he proved on the book, charged against Benson after the making of the mortgage, amounting to $38; but the court refused to do so, the evidence went to the jury, and the defendant excepted.

"The plaintiff introduced one S. J. Bolling, who swore that, before the making of the mortgage, plaintiff and said Benson came to him to write the mortgage, and that they had a paper writing—whether a note, or memorandum of account, he could not recollect, but its amount was $26. The plaintiff also introduced John Bolling, Jr., who swore that, after McKellar left in 1853, he was clerk for plaintiff; that Benson came there several times, and bought things on a credit; but the items or value he could not recollect, and he did not keep an account thereof. The plaintiff also introduced a witness, who swore that, when the mortgage was made, defendant was not present, and Benson said that it was intended to secure to plaintiff the payment of an account in his store for what he had got and expected to get afterwards during that year. Defendant moved to exclude from the jury the testimony of this last witness; but the court overruled the motion, and the defendant excepted.

"The court charged the jury, among other things, that if it was intended, at the time the mortgage was made, that it should operate as a mortgage security for such account as Benson had contracted in 1853, or might afterwards contract with plaintiff during that year, then his account with plaintiff during that year, both before and after the making of the mortgage, was secured by the mortgage; to which charge defendant excepted.

"The defendant asked the court to charge the jury,—

"1. That if they believed from the evidence that the consideration of the note sued on was the amount due by Benson to plaintiff under the mortgage, and that at the time the mortgage was made $30 was all that was due by said Benson to plaintiff under the mortgage, then the amount of the note sued on for which the defendant would be liable, would be that sum, with interest from the first of January, 1854; which charge the court refused, and defendant excepted.

"2. That if they are satisfied from the proof that the note sued on was given for the amount which might be due from Benson to plaintiff under the mortgage; that plaintiff was only able to specify on the former trial an account against Benson amounting to one barrel of flour and ten gallons of whiskey, and that his clerk (McKellar), after looking at the

Wright v. Bolling.

books, could only remember those articles and a bottle of oil as being sold to Benson ; and there has been no other evidence as to the account, save the note in issue ; then, if they believe all the balance of the evidence, they must find a verdict only for the amount of those articles, with interest from the first of January, 1854. This charge, also, the court refused to give, and the defendant excepted."

All the rulings of the court above stated are now assigned for error.

ELMORE & YANCEY, for the appellant :

1. It was not allowable to give parol evidence of the intention of Benson in executing the mortgage, so as to give Bolling a greater security than the instrument itself would give him. In a written instrument, the intention of a party is to be ascertained from the meaning of the words used in it, and from them alone ; with this exception, that extrinsic evidence is admissible to enable the court to discover the meaning of the words used, and to apply them to the particular facts of the case.—2 Phil. Ev. 276. Though a mere money consideration may be shown to have been greater or less than stated in a deed, yet it is not admissible to give parol evidence of a consideration different from and inconsistent with the one stated.—Murphy v. Branch Bank, 16 Ala. 90. The parol evidence offered materially varied the written contract itself : the written contract was, that the sale of the property should be void on payment of an account then due ; while the parol evidence added thereto the amount which might also become due at a future period.

2. It was erroneous to leave to the jury the question, what was the matter which the mortgage was intended to secure. It was the duty of the court to construe the instrument and declare its meaning.—2 Phil. Ev. (3d ed.) 278, and cases cited.

WATTS, JUDGE & JACKSON, contra :

1. The evidence of McKellar was competent. Whether it was sufficient ought to have been raised by a charge.—Bell v. Rhea & Co., 1 Ala. 83; Batre v. Simpson, 4 ib. 312.

2. The evidence showing the consideration of the mortgage was proper.

3. The first charge asked was erroneous, because it sought to confine defendant's liability on the note to the amount of Benson's indebtedness at the time of the execution of the mortgage; while the true question was, what was the amount of that indebtedness at the time of the execution of the note.

4. It needs no argument to show that the second charge asked was properly refused.

5. The charge given was certainly correct.—Robinson & Caldwell v. Mauldin, Montague & Co., 11 Ala. 980, and cases there cited.

6. The true question in the case was, not as to the validity of the mortgage between Benson and Bolling, but whether Benson owed Bolling at the time the note was executed. At that time Benson admitted his indebtedness to Bolling, in the presence of Wright; and Wright, being merely a surety, was bound by that admission, and became Benson's surety.

CHILTON, C. J.—1. There was no error in admitting the testimony of McKellar, to which exception was taken. The fact that the witness has no recollection of selling the other articles, makes no difference. He made the charges, and knows that they are correct, for he charged nothing that was not sold and delivered. He might, therefore, very properly state, that he was satisfied and believed the items so charged were sold to Benson, although he could not remember them.—1 Greenl. Ev. (5th ed.) § 437; 2 Ad. & El. 210; 2 Phil. Ev. (C. & H.) p. 551, note 421; Haig v. Newton, 1 Rep. Const. Ct. 423; ib. 373; Head v. Shaver, 9 Ala. 791.

2. A portion of the items charged on the books and proved by this witness were sold since the execution of the mortgage, but in 1853, and the defendant moved to exclude these; but the court allowed them to be proved, against his exception. This was correct. The proof tended to show a consideration for the note, and to rebut the proof offered by the defendant that the flour and ten gallons of whiskey were the only articles booked against Benson during the year 1853. The question is, not whether the mortgage shall stand as security for the items sold after it was executed, but whether the note is supported by a consideration. If Benson and Bolling agreed that the mortgage should secure the payment

for articles sold by the latter after its execution, and the note was given in part consideration of such sale, the note will be supported, whether the agreement for security would be carried out or not, unless Bolling was guilty of a fraud in inducing Wright to sign the note, by some false assurance that the mortgage would secure him, when it would not. Nothing, however, of this kind is alleged, nor is any question of the kind raised. The proof was relevant and proper. Its sufficiency and effect were matters for the jury, under the charge of the court.

3. It appears that the note and the endorsement upon the mortgage were executed at the same time—are parts of one transaction. Benson, the principal debtor and mortgagor, was present, and a party to the transaction, for he executed the note. Although, by the terms of the mortgage, the account for the year 1853, existing at the time of its execution, was alone secured by it; yet, when it was made, Benson said it was intended to operate prospectively, so as to secure the articles to be purchased thereafter in 1853, as well as the book account then existing for that year. Under these circumstances, Benson executed his note for the amount which Bolling claimed to be covered by the mortgage, with the defendant Wright (we presume) as his surety; and in consideration of Wright's signing the note, Bolling, the mortgagee, transfers to him the mortgage, by the endorsement copied above. Now, if Wright signed the note with a *knowledge of these facts*, we know of no principle which would release him by reason of the fact that the mortgage only afforded him a partial indemnity. He has all the indemnity he contracted for, and has assumed to risk the compliance on the part of Benson with what, to say the least of it, amounts to a moral obligation, resulting from his promise to allow the mortgage to operate as a security for goods to be purchased after its execution in 1853. If, however, on the other hand, Benson recognized this obligation, and gave his note to Bolling for all the account of 1853 as secured by the mortgage; and as a part of the same transaction, the defendant Wright signed the note in consideration of the transfer of the mortgage to him, which transfer shows the note to be for the mortgage debt,—then, it is perfectly clear that both Benson and Bolling

are estopped from saying that the mortgage does not cover the entire demand.—See 1 Greenl. Ev. §§ 27, 184, 195, 196, 207, 208 ; Stone v. Britton, 22 Ala. 243–248, and cases there cited. In favor of the surety, the mortgage is to have the operation agreed upon by the creditor and principal debtor. If they have said that the note which they induced him to sign was for the mortgage debt, and that therefore the mortgage transferred to him was a subsisting indemnity in his hands to the amount of his liability which he is induced to incur in consequence of such indemnity, *as against them* it must so operate, there being nothing upon the face of the mortgage, or of the endorsement of it, inconsistent with such operation. It will be observed, the question whether the mortgage is a subsisting security, arises solely between the parties themselves—no third person or creditor intervenes to contest its operation.

4. It follows from what we have said, that the proof objected to was not only proper, as rebutting the evidence of want of consideration offered by the defendant, but tended to build up an estoppel as against Benson ; giving to the mortgage the effect of securing the whole note in favor of the defendant, as announced by the affirmative charge given by the court. This charge, when considered with reference to the testimony set out in the record, on which it is based, is unexceptionable.

5. The first charge prayed for by the defendant assumed that the mortgage only secured so much of the account of 1853, as had been contracted by Benson with Bolling before its execution, and that Wright was only liable for this sum. But we have shown that, under the proof, such was not its legal operation as respects the rights of this defendant. The charge pretermits the inquiry, whether the conduct and declarations of Benson and Bolling had not given to the mortgage a more extended operation, and, under the facts disclosed by the record, was improper.

6. The last charge asked by the defendant was properly refused, as it referred to the jury the legal question, whether what McKellar had said in reference to certain items charged by him on the books of Bolling, of goods sold to Benson by him, but the sale of which he could not remember, was to be

considered as evidence. The charge sets forth the items which this witness states he remembers to have sold, and says, " if there has been no other evidence as to the account save the note in issue, then, if they believe all the balance of the evidence, they must find a verdict only for the amount of those articles, with interest from January, 1854." This question of law the court had previously settled, and properly, adversely to defendant. Besides; all the proof is not set out, and there. may have been proof which would have justified a recovery aside from the evidence contained in the charge. It is impossible to say whether a charge, predicated upon the whole proof, and which may or may not be proper as the proof may justify or forbid it, should have been given, in the absence of a knowledge of what the proof was. In such case, the party excepting must set out all the proof.

We are unable to perceive any error in the record prejudicial to the appellant. We thus qualify our conclusion, because, if the charge given be erroneous, it is upon the assumption that the defendant took the mortgage, and signed the note, with a knowledge that only part of the note was secured by it; in which event, the mortgage would be no criterion of his liability, and consequently the charge could not by possibility have worked any injury to him.

Judgment affirmed.