DETERMINED IN THE

## SECOND DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

DURING THE YEAR 1908.

---

## Thomas Tully, Appellee, v. Western Union Telegraph Company, Appellant.

### Gen. No. 4,929.

1. TORTS—*when action for delay in delivery of telegram will not be sustained.* Delay in the delivery of a telegram which requests that a common carrier delay the departure of its boat until the arrival of the sender of such telegram, will not confer a cause of action, in the absence of proof that the carrier had previously agreed to comply with such request.

2. TORTS—*when action for delay in delivery of telegram will not be sustained.* Held that the evidence in this case did not sustain a cause of action for the delay of the company in failing to deliver a telegram as follows:

"JOLIET, October, 8, 1905.

J. BURKE,
    Graham & Morton Dock,
        Chicago.

Train late, will be in Chicago ten A. M.; hold boat for a few minutes.

THOMAS TULLY."

3. EVIDENCE—*how proof of market price may be made; how may not be made.* Proof of the market price of a commodity at a particular time and place cannot be made by hearsay evidence, except that in the absence of witnesses having personal knowledge of such market price, market quotations or reports in newspapers of general circulation are competent.

Action commenced before justice of the peace. Appeal from the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the October term, 1907. Reversed and remanded. Opinion filed March 11, 1908.

(312)

WEST, ECKHART & TAYLOR, for appellant.

E. J. KELLY and BUTTERS, ARMSTRONG & FERGUSON, for appellee.

MR. PRESIDING JUSTICE WILLIS delivered the opinion of the court.

Thomas Tully brought suit before a justice of the peace of LaSalle county against the Western Union Telegraph Company to recover for the loss of prospective profits claimed to have been sustained by failure to deliver a telegram, and obtained judgment. The company appealed to the Circuit Court of said county, and Tully there obtained a verdict for $197. A motion for a new trial was overruled, judgment was entered on the verdict, and the company prosecutes this further appeal.

In October, 1905, appellee was engaged in the fruit business at Ottawa, Illinois, and was accustomed to purchase his supply of fruit in Benton Harbor, Michigan, where he had a regular agent or commission man, named Gray. When he wished to buy small quantities of fruit he made his purchases through Gray, but when he wished to purchase large quantities, he went to Benton Harbor. On Sunday morning, October 8, 1905, he left Ottawa for Chicago on the 6:10 train over the Chicago, Rock Island & Pacific Railroad, intending on his arrival in Chicago, to take passage on a boat of the Graham & Morton Dock Company, which was to leave for Benton Harbor at ten o'clock A. M. on that day. The train upon which appellee was a passenger from Ottawa to Chicago was behind its schedule time and reached Joliet at ten minutes before nine. There appellee stepped from the train and delivered to appellant's operator in the Rock Island depot, the following telegram, addressed to one Burke who controlled the departure of the boats of the Graham & Morton Dock Company, over whose line appellee shipped produce, and who was Chicago manager for said company:

"Joliet, October 8, 1905.

J. Burke,

 Graham & Morton Dock,

  Chicago,

Train late, will be in Chicago ten A. M.; hold boat for a few minutes.

            Thomas Tully."

He paid the operator the sum of thirty-one cents for the transmission of the telegram, and told him to "rush" the message as he had a big fruit deal on in Benton Harbor and did not wish to miss the boat. Appellee arrived at the dock in Chicago at 10:10 A. M. and found that the boat had gone. The message was delivered at 10:30 A. M. Appellee testified that he intended to buy fruits of various kinds at Benton Harbor that night or the next morning, which in the ordinary course of shipment would reach Ottawa Tuesday morning following; that a number of retail merchants had told him that, if his fruit was nice and the price suited, they would take some peaches and other fruit; that he did not reach Benton Harbor until two o'clock Monday afternoon, and did not have in Ottawa, Tuesday morning, the fruit he expected to have.

Appellee also testified over objection, that he at one time had a conversation with Burke, in which he said that if appellee should ever desire to have the boat delayed, to notify him and he would hold it for ten or fifteen minutes. He further testified that he intended to purchase in Benton Harbor, Sunday afternoon, October 8, 1905, certain kinds and quantities of fruit, but that he purchased nothing on that day. He also testified as to the market price of the fruits on that day, and on cross-examination, that he learned the market prices from his agent.

At the close of appellee's evidence in chief, appellant moved the court to instruct the jury to find the issues for the plaintiff and assess his damages at the sum of thirty-one cents and offered an instruction to that effect, which the court refused.

There is no evidence in this record that the Graham & Morton Dock Company had, through Burke, entered into a contract with appellee to hold the boat for him. No proof was offered that they would have held it, and had such proof been offered, it would have been incompetent. Allen v. Stout, 51 N. Y. 668; Smith v. W. U. Tel. Co., 83 Ky. 104; Weed v. Martin, 89 Ala. 587; Com. Bnk. v. Firemen's Ins. Co., 87 Wis. 297; W. U. Tel. Co. v. Ferguson, 157 Ind. 64. The only proof of the price of fruit in Benton Harbor on Sunday, October 8, 1905, was appellee's statement that Gray, his agent, had told him what the prices were that day This proof was but hearsay and clearly incompetent, and should have been excluded on appellant's motion. Kost v. Bender, 25 Mich. 515; Carpenter v. First Nat. Bnk., 119 Ill. 352; Grubey v. National Bank of Illinois, 133 Ill. 79. In the absence of witnesses having personal knowledge of the market price, the market quotations or reports in newspapers of general circulation would have been a proper source of information and admissible to establish it. Sisson v. Cleveland & Toledo Railroad Company, 14 Mich. 497; Cleveland & Toledo Railroad Company v. Perkins, 17 Mich. 296. But private information conveyed in a conversation from Gray to appellee was not admissible. There is no proof in this record that there was on the market in Benton Harbor, at the time appellee expected to arrive there and make his purchases, any fruit such as he contemplated purchasing, nor that he could have obtained such fruit at prices satisfactory to him, nor was there proof that the fruit which was on sale that day in Benton Harbor would have been satisfactory to any of his customers in Ottawa, or that the prices which he would have charged would have been satisfactory to them. There is no competent evidence tending to show that he had contracts for the sale of fruit on Tuesday, nor is there any proof that he lost any sales by the failure to deliver the telegram. It appears from the proof that he was in Benton Harbor a few hours later than he would have ar-

rived there by the boat, but there is no proof in this record whether or not he purchased the fruit he intended to buy, or if he purchased any, that it was not of as good quality and at as good prices as he could have bought the day before. There is no proof that he did not supply his customers twenty-four hours later with as much fruit and as good fruit and for as good prices as he would have supplied them if the boat had been held. There is no proof that he sustained any damages, except what he paid for the telegram, and therefore there is no occasion for us to consider the many authorities cited by counsel. There is no proof in this record to support more than a recovery for nominal damages, and the court should have given the instruction asked to find the issues for the plaintiff and to assess his damages at thirty-one cents and should have entered judgment therefor.

The judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*