Earl Penrod, Plaintiff-Appellee, v. W. A. Smith, Defendant-Appellant.

Term No. 55–O–2.

Fourth District.

February 1, 1956.

Rehearing denied February 28, 1956.

Released for publication March 26, 1956.

August L. Fowler, of Marion, and Chas. J. Huffman, of Vienna, for defendant-appellant.

R. W. Harris, and David A. Warford, both of Marion, for plaintiff-appellee.

PRESIDING JUSTICE BARDENS delivered the opinion of the court.

Plaintiff filed a chancery action in the Circuit Court of Johnson County for dissolution of an alleged partnership with defendant and for an accounting as to the partnership losses. A jury found in an advisory verdict that a partnership did exist and awarded damages to plaintiff for defendant's share of partnership losses. The decree adopted the jury's findings. Defend-

ant brings this appeal contending that the decree below is against the manifest weight of the evidence, that the alleged partnership existed for an illegal purpose, and that various errors occurred in the course of the trial which would require a reversal.

In 1952 plaintiff opened an account with a brokerage firm to trade in commodities, and for several months plaintiff traded in this account, buying commodities on margin. Defendant at said time, and for many years prior thereto, had maintained a trading account at the same brokerage house. In August 1952, a trading authority was signed by plaintiff which authorized and directed the broker to accept orders for the purchase and sale of grain or other commodities when given by the defendant, and directed the broker to enter such transactions in plaintiff's account. The authority further stated: "I hereby certify that Wm. A. Smith (the defendant) will not directly or indirectly receive any remuneration for acting as my agent." Thereafter, various commodities were bought and sold through said account with the result that in May, 1953, when the account was closed out, there was a loss of $17,761.86. Some of these transactions were made by plaintiff and some by defendant. However, all deposits in said account were made by plaintiff.

To support his allegation of the existence of a partnership, plaintiff testified substantially as follows: That in April or May of 1952 defendant told plaintiff that he was making a lot of money in the market and suggested that he be allowed to go in with plaintiff as a partner in plaintiff's trading account; that it was subsequently agreed between them that they would be partners in plaintiff's account, and that plaintiff would furnish all the margin and the profit or loss from trading in said account would be shared equally by them; that thereafter defendant often discussed with plaintiff transactions to be made in the account and did, in fact, trade in plaintiff's account; that after heavy

259

losses had occurred and the account was closed out in June 1953, that plaintiff and another witness went out to defendant's home to discuss the matter; that the defendant then stated that he would try to pay plaintiff his share of the losses when he regained his health. Several such conversations were corroborated by other witnesses.

Defendant denied the portions of plaintiff's testimony bearing on the partnership issue and stated that the arrangement was designed solely to give plaintiff the benefit of his experience in the commodity market; that it was never intended to be a partnership. On defendant's behalf, the manager of the brokerage office testified that he heard no discussion of a partnership and that on their books they carried it as an individual account in the plaintiff's name; that all calls for margin were made to plaintiff; that the trading agreement signed by the parties was a form agreement required by the broker before defendant could be permitted to trade in plaintiff's account. The accountant who prepared plaintiff's income tax returns for 1952 and 1953 testified when called by defendant that he prepared no partnership tax returns for plaintiff and defendant. This is the substance of the evidence on the issue of partnership.

Defendant's position that his trading on plaintiff's account was a gratuitous service and not the act of a partner rests on inferences to be drawn from the trading agreement and the failure to file a partnership income tax return, since the oral testimony clearly preponderates in favor of plaintiff. While, it is true, the only writing relative to the arrangement refers to defendant as an "agent," we do not find this agreement to be inconsistent with a partnership which is basically a mutual agency arrangement. But, assuming a non-partnership relationship is described, it must be noted that the agreement was one furnished by the broker for his protection in honoring defendant's orders on

plaintiff's account and was not necessarily intended by the parties to characterize their legal arrangement. In the analogous joint bank account cases in which the parties sign a contract on a signature card describing themselves as joint tenants, the Supreme Court has recently made clear that such agreements do not in themselves establish the true relationship intended by the parties. In re Estate of Schneider, 6 Ill.2d 180, 127 N.E.2d 445. In the same fashion, the failure to file a partnership income tax return is simply a circumstance to be considered with all the evidence. We conclude, therefore, that the Chancellor's finding of the existence of a partnership was not against the manifest weight of the evidence.

In connection with the partnership issue, defendant contends the Chancellor erred in refusing to admit into evidence plaintiff's individual income tax returns for the years involved. From defendant's offer of proof it appears that plaintiff's individual returns would have shown that the loss in the trading account was treated as an individual loss for tax purposes. However, without regard to the correctness of such ruling, it is apparent that such evidence could not weigh heavily in defendant's favor, for defendant having rejected any partnership arrangement, the loss was, in fact, plaintiff's individual loss until the issue was resolved in court. Therefore, we do not feel such evidence, if admitted, would shift the weight of the evidence in defendant's favor on the partnership issue.

▆▆▆ Defendant urges also that even if a partnership be deemed to have existed, that the entire arrangement was illegal under Section 328, Chapter 38, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 37.258] which provides as follows:

"Whoever contracts to have or give himself or another the option to sell or buy, at a future time, any grain, or other commodity . . . where it is at the time of

the making of such contract intended by both parties thereto that the option, whenever exercised, or the contract resulting therefrom, shall be settled, not by the receipt or delivery of such property, but by the payment only of differences in prices thereof . . . shall be fined . . . ; and all contracts made in violation of this Section shall be considered gambling contracts, and shall be void."

Our courts have held that to void a contract under this provision it must be proven that both parties to the transaction intended or understood that settlement would be made on differences in price rather than by delivery or receipt of the commodity. Riordon v. McCabe, 341 Ill. 506, 512, 173 N. E. 660; Salzman v. Boeing, 311 Ill. App. 83, 35 N.E.2d 536. The burden of showing transactions were gambling in nature is upon the party making such claim. Pelouze v. Slaughter, 241 Ill. 215, 89 N. E. 259; Grubey v. National Bank of Illinois, 133 Ill. 79, 24 N. E. 575. This contention, involving intent, requires an issue to be made because the illegality cannot otherwise be determined. Defendant did not raise the issue of illegality in his pleadings, nor does it appear it was raised in any other manner before the lower court. It is not, therefore, properly before this court. Wise v. Potomac Nat. Bank, 393 Ill. 357, 65 N.E.2d 767; Bowman v. Pettersen, 410 Ill. 519, 102 N.E.2d 787; Dirksmeyer v. Barnes, 2 Ill.App.2d 496, 119 N.E.2d 813.

We have considered the other alleged errors raised by defendant and find in them no grounds for reversing the decree below.

Decree affirmed.

CULBERTSON and SCHEINEMAN, JJ., concur.